## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRANDON SHARPE,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **PRIMEX GARDEN CENTER, MARSHALL GREEN, KATELYN GINSBERG, DANNY GINSBERG AND JAMIE KARNIK,** | **NO. 23-4843** |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Defendants Primex Garden Center ("Primex"), Marshall Green, Katelyn Ginsberg, Danny Ginsberg, and Jamie Karnik (together, the "Individual Defendants") move to dismiss Plaintiff Brandon Sharpe's Complaint against them for various violations of state and federal employment discrimination statutes. Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

### I.    BACKGROUND[1]

According to his Amended Complaint, Sharpe, a White man, worked for Primex from March 2019 to September 2022. At some point during his employment there, Primex changed hands, and Green and the Ginsbergs became its owners. In March 2022, Karnik was hired as a cashier, but she quickly was promoted to a management position after her predecessor, Anne Breen, was fired. Karnik, according to Sharpe, is "a non-white, Native American" woman, and Breen is a White woman. Green told Sharpe that Breen was fired as part of "the beginning stages of" a new "company policy," implementation of which would allow Primex to 'move in a different direction.'" This "direction," per the Amended Complaint, was "based on woke

---

[1] The below factual recitation is taken from Sharpe's Amended Complaint, well-pleaded allegations from which are taken as true at this stage. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

principles that were openly espoused by" Karnik, "which were adamantly against white people in general."

 Consistent with that alleged policy, Karnik personally "voiced the issues she had with white, Caucasian males." When pressed on what Primex's "new direction" would entail, she said that the plan was "to move the company away from 'the past,'" by which she meant "issues related to white men." Karnik "spoke about issues related to race often and in all of her accounts the bad guy was the 'white man.'" She "was openly hostile and abusive toward white people and repeatedly made comments insulting white people and demonstrating a preference against people who are white and specifically white[] men." She "said in words or substance that white men had held positions of power at the expense of minorities." To Karnik, "white[] men" was "a pejorative term." She "subjected [Sharpe] to hostile, argumentative interactions on a daily basis." And at other points, she "ignored and refused to talk to" him.

 In September of 2022, Karnik told Sharpe "that her ex-husband had blonde hair and blue eyes, and that she was grateful that her daughter did not look like a white, Caucasian person." This was one of "multiple occasions" where Karnik mentioned her daughter's appearance in a way that "includ[ed] comments indicating racist views toward white, Caucasian people." In another incident, even though Sharpe had been promoted to Nursery Supervisor, Karnik "refused to consider, or acknowledge" Sharpe's views about disciplinary actions that he had recommended for the nursery's staff. This was consistent with Karnik's repeated "questioning [Sharpe's] judgment."

 According to Sharpe, Karnik was hired and promoted because of, not in spite of, her attitude towards him. Primex allegedly "ma[de] business decisions based on the race of their employees." "White Caucasian managers"—only Breen and Sharpe are mentioned by name—

"were terminated and replaced" because of their race "so that [Primex] could assign more management positions to 'people who were historically oppressed.'"  And Karnik eventually became Director of Human Resources, which gave her "control over all personnel decisions" and "operational decisions," even though she "did not have the training, education, skill, knowledge, or demeanor required."

After Sharpe returned from a vacation, Karnik summoned him to her office and told him "that he was suspended pending investigation."  Neither Karnik nor Green explained the basis for Sharpe's suspension.  A few days later, in a phone call, Green told Sharpe "that he 'understands that white people his age grew up in a different time.'"  But because they were "taking [Primex] in a different direction," Sharpe would have to be fired.  Sharpe "opposed and reported" this new policy because it "was not fair and would result in discrimination" and "specifically commented about [Primex's] new company policy during the termination."  He warned that "Karnik was exhibiting the same kind of racist behavior that she claimed to be against."  In response, Sharpe was told—it is not clear by whom—that, "because [he] is a 'white person,' [he] was not 'capable of understanding the new direction to which [Primex was] taking the company.'"

Sharpe subsequently filed this lawsuit, alleging that Defendants: (1) discriminated against him because of his race and gender; (2) unlawfully retaliated against his protests of Primex's new policy; and, (3) subjected him to a hostile work environment, in violation of: (a) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (b) the Civil Rights Act of 1866, 42 U.S.C. § 1981; and, (c) the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. § 951 *et seq.*  The Section 1981 and PHRA claims are brought against all Defendants, while the Title VII claims are pressed against Primex only.

## II.      LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  When analyzing a motion to dismiss, the complaint must be construed "in the light most favorable to the plaintiff," with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

On a motion to dismiss, a complaint may be dismissed with prejudice and plaintiff may be denied leave to further amend his claims "if amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  Simply stated, a court may dismiss a claim with prejudice if an amendment would still not cure the deficiency. *Id.*  Where, as here, one amended pleading already has been filed, further amendment may be allowed "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

## III.     DISCUSSION

### A.  Preliminary Issues

Defendants' Motion to Dismiss implicates several preliminary issues that merit

addressing prior to evaluating the sufficiency of the allegations in Sharpe's Amended Complaint.

### i. Omnibus Arguments

Defendants first argue that applying the familiar burden-shifting framework for employment discrimination cases from *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), applies here. But *McDonnell Douglas* sets out "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). So, at the motion-to-dismiss stage, Sharpe need only "plead[] sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of" the relevant elements for each theory of liability that he presses. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *accord Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017) ("Under the *McDonnell-Douglas* framework, a claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite *prima facie* elements have been established.").[2] Thus, only the plausibility of Sharpe's allegations, and not Defendants' race-neutral explanations for their conduct, are considered at this early stage in this case.

Next, Defendants argue that there are insufficient allegations of individual misconduct by any of the Individual Defendants to give rise to liability under the PHRA or Section 1981. The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy that rule, a complaint must "'identif[y] discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims." *Garrett v. Wexford Health*, 938 F.3d 69, 93 (3d Cir. 2019) (quoting *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019) (per curiam)); *see also Corbin*

---

[2] Moreover, *McDonnell Douglas* provides a mechanism for proving racial discrimination using indirect evidence. *Mieczkowski v. York Cty. Sch. Dist.*, 414 F. App'x 441, 444 (3d Cir. 2011) (not precedential). Sharpe includes in his Amended Complaint allegations of direct discrimination that would not implicate *McDonnell Douglas* in any event.

*v. Bucks County*, 2023 WL 8042560, at *2 (E.D. Pa. Nov. 21, 2023) (noting that a plaintiff must "plead[] sufficient facts to show that the plaintiff is entitled to relief from a particular defendant").  Otherwise, the court cannot "conclude that a defendant 'is liable for the misconduct alleged.'"  *Corbin*, 2023 WL 8042560, at *2 (quoting *Iqbal*, 556 U.S. at 678).  Put differently, a complaint cannot "forc[e] both the Defendants and the Court to guess who did what to whom when.  Such speculation is anathema to contemporary pleading standards," *Japhet v. Francis E. Parker Mem. Home, Inc.*, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).

As to the Ginsbergs, Defendants are correct.  The Amended Complaint invites exactly that sort of speculation as to their conduct.  They are mentioned by name only: (1) to explain their ownership stake in Primex and supervisory authority over Sharpe; (2) to allege that they attended a meeting with Sharpe where he "was complimented for providing excellent input" on issues such as appropriate workplace attire and a smoking policy; and, (3) to allege that they were on the phone call on which Sharpe was fired.  As these allegations do not give rise to liability under any of the statutes that Sharpe accuses them of violating, they will be dismissed from this case without prejudice.  As to the other Individual Defendants, however, this argument falls short.  Green is alleged to have contextualized the decision to fire him by noting "that white people [Sharpe's] age grew up in a different time."  As discussed below, such allegations can, at this early stage, help form part of a plausible allegation of a violation of law.  And of course, the Amended Complaint is replete with allegations regarding Karnik's interactions with Sharpe, so there is no viable argument that she is not sufficiently individually identified.

### ii. Section 1981

Defendants contend that, because Sharpe is White, Section 1981's guarantee of "the full and equal benefit of all laws . . . as is enjoyed by white citizens," 42 U.S.C. § 1981(a), presents "a tautology" because he "already ha[s] access to the benefits of the law enjoyed by" such

people.[3]  In saying so, the Court understands Defendants to be arguing that Sharpe's claims must

be dismissed because he "appears to be creating diversity where no diversity truly exists."  This

is fatal to Sharpe's claim in their view because, as Defendants put it in their Reply, "there must

be a racial disparity at issue" between the employees involved in an employment discrimination

claim, and the Amended Complaint does not contain any allegations regarding the races of

anyone besides Sharpe and Karnik, so no race discrimination claims can be sustained here.

That is not the law.  The Supreme Court "ha[s] rejected any conclusive presumption that

an employer will not discriminate against members of his own race."  *Oncale v. Sundowner*

*Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998); *see also Castaneda v. Partida*, 430 U.S. 482, 499

(1977) ("Because of the many facets of human motivation, it would be unwise to presume as a

matter of law that human beings of one definable group will not discriminate against other

members of their group.").  True enough, "[i]n the 'ordinary case' where a minority plaintiff

alleges race-based employment discrimination, the plaintiff 'must carry the initial burden under

the statute of establishing a prima facie case of racial discrimination . . . by showing . . . that he

belongs to a racial minority.'"  *Iadimarco v. Runyon*, 190 F.3d 151, 157 (3d Cir. 1999) (quoting

*McDonnell Douglas*, 411 U.S. at 802).  But in employment discrimination claims involving

White plaintiffs, the Third Circuit has held that such employees need only "present sufficient

evidence to allow a fact finder to conclude that the employer is treating some people less

favorably than others based upon a trait that is protected under Title VII."  *Id.* at 161.  This

holding has been applied to Section 1981 as well.  *See Mosca v. Cole*, 217 F. App'x 158, 161 (3d

---

[3] To the extent that Defendants also argue that Sharpe cannot avail himself of Section 1981 because he is White, that is incorrect.  The Supreme Court long ago addressed this issue, noting that "[w]hile a mechanical reading of the phrase 'as is enjoyed by white citizens' would seem to lend support to [an interpretation of Section 1981 that did not protect White plaintiffs], we have previously described this phrase simply as emphasizing 'the racial character of the rights being protected.'"  *McDonald v. Santa Fe Transp. Co.*, 427 U.S. 273, 287 (1976) (quoting *Georgia v. Rachel*, 384 U.S. 780, 791 (1966)).

Cir. 2007) (not precedential).  Therefore, whether Sharpe was a "member of a racial minority" and "the identity, race and color of the persons whom allegedly made the woke policy changes within the company" are not dispositive here.

### *iii. Title VII*

Finally, Defendants argue that Sharpe's Title VII claims must be dismissed because he has not pled that Primex has enough employees to be covered by the statute.  Title VII defines an "employer" subject to its obligations as, subject to some limitations not relevant here, "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 2000e(b).  The Supreme Court has held that, while not jurisdictional, "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006).

Here, Sharpe does not allege how many employees Primex has, and the Amended Complaint does not identify fifteen Primex employees.  Nor does he respond to Defendants' argument regarding that failure in his opposition to their Motion.  Sharpe therefore has waived his causes of action under Title VII and they will be dismissed with prejudice. *See Levy-Tatum v. Navient Sols., Inc.*, 183 F.Supp.3d 701, 712 (E.D. Pa. 2016) (citations omitted).

### B.  Disparate Treatment

To plausibly allege disparate treatment, a plaintiff must:

> "[R]aise a reasonable expectation that discovery will reveal evidence" of the following prima facie elements: (1) the plaintiff is a member of a protected class; (2) he or she was qualified for the position sought to be obtained or retained; (3) he or she suffered an "adverse employment action"; and (4) the adverse action occurred under circumstances that could indicate that plaintiff's protected status played a "motivating or determinative" factor in the adverse action.

*McKinney v. Supreme Mid-Atl. Corp.*, 2018 WL 6182058, at *3 (M.D. Pa. Nov. 27, 2018)

(quoting *Connelly*, 809 F.3d at 789, 791).[4]  On top of their arguments about Sharpe's race,[5] Defendants argue that his disparate treatment claims must be dismissed because: (1) the Amended Complaint "is devoid of any allegations of causation that would connect . . . Karnik's alleged disdain for white men to his termination from employment;" (2) that Karnik allegedly was "unqualified" and "untrained" and held White men in low esteem does not establish a discrimination claim without more; and, (3) "policies designed to diversity a workforce and leadership are aspirational and therefore not actionable in any context."  Each of these arguments question whether Sharpe's race or gender was a motivating or determinative factor in his firing.[6]

A plaintiff can plead that an adverse employment action took place under circumstances where one should infer discrimination "in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus."  *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010) (not precedential) (citing *Swierkiewicz*, 534 U.S. at 511-12).  Here, Sharpe proffers no similarly situated colleagues to support his claims, but he alleges both similar racial discrimination against Anne Breen and multiple statements by his supervisors that, drawing all reasonable inferences in his favor, plausibly suggest Defendants acted with racial animus.[7]  First, Karnik allegedly told

---

[4] Sharpe's disparate treatment claims under Section 1981 and the PHRA are analyzed using the same framework. *Connelly*, 809 F.3d at 791 n.8.

[5] Defendants argue that Sharpe is not a member of a "protected class," but, for the same reasons discussed above in the context of their attacks on his Section 1981 claims, that argument fails.  *McDonald*, 427 U.S. at 287.

[6] The Court thus does not understand Defendants to be contesting either that Sharpe was qualified for his position or that he suffered an adverse employment action.

[7] In portions of the Amended Complaint, Sharpe alleges that he was discriminated against because of his gender as well.  Defendants advance no substantive argument in favor of dismissing this claim, so it will not be addressed here.  *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997); E.D. Pa. Local Civ. R. 7.1(c).

Sharpe that Defendants' plan for Primex was "to move the company away from 'the past,'" by which Sharpe believes she meant "issues related to white men."  Second, on the phone call where he was fired, Green allegedly attempted to soften the blow of his firing by acknowledging that he "underst[ood] that white people [Sharpe's] age grew up in a different time."  The content and timing of this statement raises the inference that Sharpe's race was a motivating factor in his firing.  At this early stage in the case, these allegations "raise a reasonable expectation that discovery will reveal evidence that [Sharpe's] protected status . . . played either a motivating or determinative factor in [Primex's] decision" to fire him.  *Connelly*, 809 F.3d at 791.  Therefore, Defendants' Motion will be denied with respect to Sharpe's claims of disparate treatment under Section 1981 and the PHRA.

### C.  Retaliation

To plausibly plead retaliation under Section 1981[8] and the PHRA,[9] Sharpe must allege that he: (1) engaged in protected activity; (2) Primex took some adverse employment action against him; and, (3) "there was a causal connection between [his] participation in the protected activity and the adverse employment action."  *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)).[10]  These statutes protect "not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making

---

[8] Despite there being no explicit prohibition against retaliation in Section 1981's text, "the view that [the statute] encompasses retaliation claims is indeed well embedded in the law."  *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451 (2008).

[9] The PHRA makes it unlawful for "any . . . employer . . . to discriminate in any manner against any individual because such individual has opposed any practice forbidden by" the law.  43 Pa. C.S. § 455(d).

[10] Although *Moore* evaluated a plaintiff's claim under Title VII, here, as with disparate treatment claims, Section 1981 and PHRA claims are analyzed under that statute's framework.  *Onely v. Redner's Mkts., Inc.*, 2023 WL 6626120, at *8 & n.8 (E.D. Pa. Oct. 11, 2023) (Title VII and Section 1981); *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192-93 (3d Cir. 2015) (Title VII and the PHRA).

complaints to management.'"  *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015)

(quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir.

2006)).

Defendants argue that Sharpe's retaliation claims must be dismissed because, although

"he has pleaded that [Primex] had 'woke' policies and implemented them," Sharpe "has not

shown that his opposition to such policies occurred before" he filed this lawsuit or "that he was

terminated because of such opposition."  Indeed, to be protected against retaliation, an employee

must have made his opposition to his employer's unlawful policy known before or at the same

time as when the adverse employment action took place.  *Farrell v. Planters Lifesavers Co.*, 206

F.3d 271, 279 (3d Cir. 2000) (citations omitted); *see Leffert v. Walmart Inc.*, 2023 WL 8810790,

at *3 (E.D. Pa. Dec. 20, 2023) ("[W]hile Leffert alleges protected activity when he complained

to Walmart employee Doug about his termination, that complaint could not have caused his

termination because he had already been fired.").  But in his Amended Complaint, Sharpe

appears to only allege that he expressed his "opposition to the unlawful employment practices

of" Primex and "Karnik's racist view[s] against white, Caucasian males" in reaction to his firing.

And again, he does not include a substantive response to this argument in his brief in opposition

to the Motion to Dismiss.  Having made no argument contra to the Defendants' motion to

dismiss briefing on this point, his retaliation claims under Section 1981 and the PHRA fail and

will be dismissed with prejudice.  *Levy-Tatum*, 183 F.Supp.3d at 712.

### D.  Hostile Work Environment

A hostile work environment claim requires proof that Sharpe: (1) suffered intentional

discrimination because of his protected status; (2) "the discrimination was severe or pervasive;"

(3) it "detrimentally affected" him; and, (4) it "would detrimentally affect a reasonable person in

like circumstances."  *Castleberry*, 863 F.3d at 263 (quoting *Mandel v. M & Q Packaging Corp.*,

706 F.3d 157, 167 (3d Cir. 2013)). To determine employer liability, the plaintiff also must show that *respondeat superior* liability exists. *Mandel*, 706 F.3d at 167 (quotation omitted).

As to the third element, "severe" and "pervasive" harassment are two distinct types of hostile work environments. "[S]ome harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Castleberry*, 863 F.3d at 264. Thus, in some circumstances, a single racial slur can support a hostile work environment claim. *Id.* at 265. But in other cases, plaintiffs seek to remedy "the cumulative effect of a thousand cuts," and acts "which are not individually actionable" but "may be aggregated to make out a . . . claim." *O'Connor v. City of Newark*, 440 F.3d 125, 127-28 (3d Cir. 2006). Several factors are to be considered in analyzing a hostile work environment claim: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). This cause of action directs courts to "concentrate not on individual incidents, but on the overall scenario." *Qin v. Vertex, Inc.*, 100 F.4th 458, 471 (3d Cir. 2024) (quoting *Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005)).

In cases alleging pervasive harassment, "'offhand[] comments and isolated incidents (unless extremely serious)' are not sufficient to sustain a hostile work environment claim." *Watkins v. Pa. Dep't of Corr.*, 2023 WL 5925896, at *4 (3d Cir. Sept. 12, 2023) (not precedential) (quoting *Caver*, 420 F.3d at 262); *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Thus, although "courts may look to conduct directed at individuals other than the plaintiff in determining whether a hostile work environment exists," *Nitkin v. Main Line Health*, 67 F.4th 565, 572 n.4 (3d Cir. 2023), a "comment not made directly" to the plaintiff is

less likely to cause a court to consider harassment to be pervasive, *Watkins*, 2023 WL 5925896, at *4; *compare Washington v. Se. Pa. Transp. Auth.*, 2021 WL 2649146, at *26 (E.D. Pa. June 28, 2021), *with Fields v. Am. Airlines, Inc.*, 2021 WL 4306021, at *9 (E.D. Pa. Sept. 22, 2021).

Here, most of Sharpe's allegations to support his hostile work environment claims relate to Karnik's "repeated[] . . . comments insulting white people."  The Court thus understands him to be alleging "pervasive," as opposed to "severe" harassment.[11]  But not all of Sharpe's allegations of misconduct are equally cognizable bases for such a claim.  First, "[s]nubs and unjust criticisms of one's work are not poisonous enough to create an actionable hostile work environment."  *Miller v. Aluminum Co. of Am.*, 679 F. Supp. 495, 502 (W.D. Pa. 1988).  So, Sharpe's allegations that Karnik repeatedly ignored him cannot serve to defeat Defendants' Motion.  Second, this is not the sort of case where an employer's "constant drumbeat of essentialist, deterministic, and negative language" about the plaintiff's race was directed at him such that pervasive harassment was plausibly alleged.  *De Piero v. Pa. State Univ.*, 2024 WL 128209, at *8 (E.D. Pa. Jan. 11, 2024); *cf. Castleberry*, 863 F.3d at 266 (finding the plaintiff had plausibly alleged pervasive harassment where, among other incidents, "'on several occasions' their sign-in sheets bore racially discriminatory comments"); *Diemert v. City of Seattle*, 689 F. Supp.3d 956, 963 (W.D. Wash. 2023).  While she sometimes spoke about White people in essentialist terms, not all of Karnik's comments about White people can reasonably be considered to have been aimed at Sharpe.  For example, when she expressed her joy that her daughter did not inherit her White father's looks, Karnik did not tie that sentiment to a negative statement about all White people or specifically to Sharpe).  Similarly, Karnik's comment "that

---

[11] Indeed, the Amended Complaint does not plausibly allege "severe" harassment.  Such claims require egregious misconduct not alleged here.  *See, e.g.*, *Castleberry*, 863 F.3d at 262, 265.

white men had held positions of power at the expense of minorities" does not move the needle much absent some allegation that she made these comments in a way that targeted Sharpe.

What is left to support Sharpe's hostile work environment claim beyond these incidents, then, are Green's comment that he "underst[ood] that white people [Sharpe's] age grew up in a different time," vague allegations that Karnik "subjected [Sharpe] to hostile, argumentative interactions on a daily basis" and "repeatedly made comments insulting white people," and another comment by someone at Primex (it is unclear who) that Sharpe was not "capable of understanding the new direction" the company was being taken in because he was White. Analyzed as a whole, the allegations in the Amended Complaint do not clear the high bar that the Third Circuit has set for pervasive harassment. *See Qin*, 100 F.4th at 471; *Nitkin*, 67 F.4th at 572 (collecting cases); *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 182 (3d Cir. 2020); *Greer v. Mondelez Glob., Inc.*, 590 F. App'x 170, 174 (3d Cir. 2014) (not precedential) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)). Therefore, Sharpe's hostile work environment claims under Section 1981 and the PHRA will be dismissed without prejudice.

### E.  Individual Liability Under the PHRA

Finally, Sharpe presses a claim under the PHRA against the Individual Defendants only, alleging that they are liable for aiding and abetting "the doing of any act declared by [the PHRA] to be an unlawful discriminatory practice." 43 Pa. C.S. § 955(e). Individual liability for aiding and abetting a PHRA violation can be predicated on plausible allegations that a supervisor "knew or should have known that the [p]laintiff was being subjected to harassment but repeatedly refused to take action to end" it, *Jeannot v. Phila. Housing Auth.*, 356 F. Supp.3d 440, 449 (E.D. Pa. 2018) (internal quotation marks and citation omitted); *see Dici v. Pennsylvania*, 91 F.3d 542, 553 (3d Cir. 1996); or, as is crucial for this case, "an individual supervisory employee can be held liable under an aiding and abetting/accomplice liability theory pursuant to § 955(e) for h[er]

14

own direct acts of discrimination or for his failure to take action to prevent further discrimination by an employee under supervision," *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp.2d 885, 887 (E.D. Pa. 1998) (citations omitted); *see also Nelatury v. Pa. State Univ.*, 633 F. Supp.3d 716, 734-35 (W.D. Pa. 2022).  But "[m]ere conclusory and non-specific allegations of aiding and abetting are insufficient to survive a motion to dismiss." *Jeannot*, 356 F. Supp.3d at 450 (citation omitted).

Defendants argue that the Amended Complaint does not contain sufficient allegations to sustain an aiding-and-abetting claim under the PHRA because Sharpe has failed to "describe the unlawful conduct" of each Individual Defendant "and/or . . . whom he [or she] supervised."  This argument is well-taken as to Green and the Ginsbergs, but not as to Karnik.  There are insufficient allegations regarding Green's or the Ginsbergs' knowledge of Karnik's conduct—or their relationship to Karnik in such a way that would illustrate that they should have known about it—to sustain this claim as to them.  Green is alleged only: (1) to have met with Sharpe in July 2022, when he "was complimented for providing excellent input;" (2) to have "refused to provide any meaningful information" when Sharpe asked him why he was suspended; (3) to have told Sharpe on the phone call with the other Individual Defendants that he "understands that white people his age grew up in a different time" and that they were "taking the company in a different direction;" and, (4) to have been present when, apparently on the same call, Sharpe declared "that the new company policy was not fair and would result in discrimination."  Nowhere does Sharpe allege that Green knew about any of his interactions with Karnik before his termination.  And, by way of illustration only, the Complaint provides no specific allegations, that Green had any role in hiring Karnik, promoting her to Director of Human Resources, engaging with her in a decision to terminate Plaintiff, or was involved directly in hiring or firing

15

decisions generally.  Moreover, as discussed *supra*, there are next to no allegations regarding the Ginsbergs' conduct.  Sharpe's claim under Section 955(e) of the PHRA therefore will be dismissed without prejudice as to Green and the Ginsbergs.

As to Karnik, however, this claim survives.  Unlike Sharpe's claim against the other Individual Defendants, here, Karnik's own alleged conduct suffices to deny the Motion to Dismiss.  Most of the allegations of discrimination in the Amended Complaint are against Karnik herself.  *See Nelatury*, 633 F. Supp.3d at 734-35; *Davis*, 20 F. Supp.2d at 887.  And as discussed above, Sharpe plausibly has alleged violations of the PHRA for disparate treatment based on Karnik's conduct.  *See* 43 Pa. C.S. § 955(a).  For now, that is all that he need allege to defeat Defendants' Motion to Dismiss as to his Section 955(e) claim against her.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part and denied in part.

An appropriate order follows.

BY THE COURT:

/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**